**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **RODERICK T. ALLEN,** | ) | |
| **No. N94327,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-00883-JPG** |
| | ) | |
| **C/O M. HANKS, and** | ) | |
| **C/O B. EASTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff Roderick T. Allen, an inmate in Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on perceived threats by C/O M. Hanks and the denial of extra food trays by C/O B. Easton.  This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, and for consideration of Plaintiff's request for "Emergency Relief," which is generously construed as a motion for a temporary restraining order ("TRO").  Because Plaintiff seeks a TRO, the Court will immediately take up the case.  *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012).

Plaintiff has not paid the $400 filing fee, nor has he sought leave to proceed *in forma pauperis* ("IFP") in this case (*see* 28 U.S.C. § 1914(a)).  As a matter of course, the Clerk of Court has sent notice that Plaintiff has 30 days to either pay or move for IFP status (*see* Doc. 2).  However, given that Plaintiff has previous been notified that he must simultaneously file his complaint and either submit the filing fee or move for pauper status (*see Allen v. Chapman*, Case

No. 14-cv-348-JPG (S.D. Ill., dismissed June 24, 2014)), the Court views Allen as knowingly trying to skirt the payment procedures.  If Plaintiff Allen had filed a motion for pauper status, he would have to overcome the fact that he has previously filed five cases that counted as "strikes" under 28 U.S.C. § 1915(g).   Even if Plaintiff had submitted the $400 filing fee for this case, he still owes thousands of dollars for other cases and could not proceed without paying that debt in full. The Court, therefore, will analyze the situation as though Allen had moved for pauper status.

## The Applicable Legal Standards

### Section 1915(g)

The statute that permits a litigant to proceed *in forma pauperis*, 28 U.S.C. § 1915, further provides:

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury*.

28 U.S.C. § 1915(g) (emphasis added).

Court documents are, of course, public records of which the Court can take judicial notice.  *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).  Review of documents filed in the electronic docket of this Court, and on the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov), discloses that Allen has already had five other cases dismissed as frivolous or for failure to state a claim upon which relief may be granted. *See Allen v. Chapman*, Case No. 11-cv-1130-MJR (S.D. Ill., dismissed Aug. 29, 2012); *Allen v. Godinez*, Case No. 12-cv-936-GPM (S.D. Ill., dismissed Oct. 18, 2012); and *Allen v. Harrington*, Case No. 13-cv-725-GPM (S.D. Ill., dismissed Aug. 22, 2013); *Allen v. Bower*, Case No. 13-cv-931-MJR

(S.D. Ill., dismissed Mar. 17, 2013); and most recently *Allen v. Chapman*, Case No. 14-cv-348-JPG (S.D. Ill., dismissed June 24, 2014).

The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). In general, courts "deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous." *Id*. at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed IFP." *Id*. at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

**Injunctive Relief**

A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if:

> (A) specific facts in an affidavit or a verified complaint clearly show that *immediate and irreparable injury, loss, or damage* will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED.R.CIV.P. 65(b)(1) (emphasis added).

**Section 1915A**

Section 1915A provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000).   At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Thus, Plaintiff must clear multiple hurdles.   If imminent danger is not sufficiently alleged to overcome the three-strikes bar, his motion for a TRO would likely fail and he would have to pay the $400 filing fee before the case could proceed.   Although the three strikes bar and the motion for TRO are of preliminary concern, if the complaint cannot pass muster under 1915A, there is no basis for subject matter jurisdiction and the motion to a TRO would automatically fail.  *See Greater Chicago Combine and Ctr., Inc. v. City of Chicago,* 431 F.3d 1065, 1069-70 (7th Cir. 2005).

## The Complaint

According to the complaint, beginning on June 27, 2014, C/O M. Hanks banged on the cell door window with his fist as he passed by.   Plaintiff contends that Hanks used such force that, had the window been made of glass, it would have shattered.   Plaintiff saw on Hanks' face "the anger, rage and hatred" Hanks had for him.   A few days later, on July 1, Hanks again struck the window of Plaintiff's cell.   C/O Hanks referred to Plaintiff as a "mother f***er" and walked on.   Hanks similarly pounded on the cell door window on July 4.   On August 9, C/O Hanks

initially approached Plaintiff's cell and yelled at Plaintiff to "Shut the f*** up and take a tray!"
Hanks later returned and struck the cell window with his elbow, directly where Plaintiff had his
face pressed.  Hanks then threatened to "shake Plaintiff's ass right out of [the cell]" if Plaintiff
continued to "pass notes" about him.  After each incident, Plaintiff filed a grievance or otherwise
attempted to report Hanks' behavior.

On July 17, 2014, Plaintiff complained to C/O B. Easton that he had been receiving "half-
portion" dinner trays, and Plaintiff asked if Easton could do anything to fix the problem.  Easton
told Plaintiff that he could not discuss the food trays "because of the lawsuit."[1]  Easton did not
remedy the situation as requested.  Plaintiff explains that inmate workers had "very graciously"
been providing Plaintiff with extra food trays because they could see that he had lost "excessive
amounts of body weight."  However, C/O Easton put an end to Plaintiff receiving extra food
trays, despite being in a position to see Plaintiff's weight loss.

Plaintiff perceives that C/O Hanks has threatened to attack and kill him, and the C/O
Easton is trying to ensure Plaintiff starves to death.  He states that he has "an intense fear of
imminent, great bodily harm."  Plaintiff also asserts that Hanks and Easton are retaliating against
him for his lawsuit against Hanks.

Plaintiff prays for: (1) a restraining order preventing C/O Hanks and C/O Easton from
contacting his mother; (2) a determination if there is a monetary motive for denying Plaintiff
food; (3) an injunction prohibiting Hanks and Easton from escorting Plaintiff on any call passes;

---

[1] Plaintiff contends the lawsuit Easton is referring to is *Allen v. Hanks*, Case No. 14-cv-591-JPG-
PMF (S.D. Ill., filed May 22, 2014), which is pending.  In that case Plaintiff alleges that Hanks
has repeatedly attempted to endanger him by placing him in a two-man cell, as opposed to a
single cell.  Allen suspects that *any* future cellmate could harm him.  It is also alleged in that case
that Hanks looked at Plaintiff in a menacing manner, although any constitutional claim based on
the glaring was summarily rejected.

(4) an injunction prohibiting Hanks from opening the hatchway to Plaintiff's cell for any reason; and (5) compensatory damages.

Based on the allegations in the complaint, the Court finds it convenient to frame the allegations of the *pro se* complaint into three counts.

**Count 1:  C/O Hanks used excessive force and intimidation against Plaintiff in violation of the Eighth Amendment;**

**Count 2:  C/O Easton denied Plaintiff food trays, in violation of the Eighth amendment; and**

**Count 3:  C/O Hanks and C/O Easton retaliated against Plaintiff for filing a lawsuit against C/O Hanks, in violation of the First Amendment.**

## Discussion

### The Three Strikes Bar

Count 1 is premised upon C/O Hanks' repeatedly pounding on the window of Plaintiff's cell door, having a look of "anger, rage and hatred," cursing, and threatening to "shake Plaintiff's ass right out of [the cell]."  These allegations are not sufficiently serious enough to constitute "imminent danger of serious physical injury," as required under the three strikes provision, Section 1915(g).  Plaintiff's conclusory assertion that C/O Hanks has threatened his life, or that he fears for his life, is not supported by the narrative of the complaint.  The closest Plaintiff comes to alleging even a fear of imminent serious physical injury is the threat that Hanks would "shake Plaintiff's ass right out of [the cell]" if Plaintiff continued to "pass notes" about Hanks.  This allegation, at least as pleaded, does not rise to the level of something that a reasonable person would construe as a "real and proximate" threat of serious physical injury—the standard announced in *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003).

Count 2 also fails to sufficiently allege a real and proximate threat of serious physical injury. Although inadequate nutrition can lead to serious physical injury and even death, the complaint only

offers an amorphous assertion that Plaintiff has lost "excessive amounts of body weight."  The complaint describes Plaintiff only receiving half portions of the dinner meal, and being denied additional food trays that inmate workers had gratuitously been giving him.   Although this claim gives the Court pause, the fact that the complaint's prayer for relief pertains to matters unrelated to the food service (and unrelated to Count 1, as well) supports the conclusion that Plaintiff is not facing a real and proximate threat, as required under Section 1915(g).

Lastly, Count 3, regarding alleged retaliation for filing a lawsuit does not pertain to any threat greater than the actions at issue in Counts 1 and 2, which have been found not to constitute a real and proximate threat of serious physical harm.

For these reasons, Plaintiff has not cleared the three strikes bar and he must pay the $400 filing fee before his action can proceed.  Accordingly, at this time the Court will not perform a full preliminary review under Section 1915A.

**The Motion for TRO**

Out of an abundance of caution, the Court will briefly address the motion for a TRO, despite the three strikes bar.  The two legal standards are virtual twins and for the same reasons Plaintiff failed to clear the three strikes bar the motion for a TRO fails.

The complaint does not clearly show (by way of allegation) that immediate and irreparable injury, loss, or damage will result if the Court does not intervene before the defendants can be heard in opposition.  Again, the closest to an irreparable injury that is pleaded is the allegation regarding the loss of "excessive amounts of body weight."   However, as previously noted, specific facts have not been alleged regarding the amount of weight loss, and drawing on the Court's experience and common sense, when Plaintiff's prayer for relief does not even mention his dietary needs, this claim is merely possible, not plausible, as required under the *Twombly* pleading standard.  *See Smoke Shop, LLC v. United States*, __F.3d__, 2014 WL 3800400,

*5-6 (7th Cir. Aug. 4, 2014) (the plausibility determination is context-specific, requiring the court to draw upon its judicial experience and common sense).

**The Filing Fee**

As already noted, Plaintiff has more than three strikes for purposes of 28 U.S.C. § 1915(g), and the Court has concluded that he cannot proceed as a pauper. Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee for this case remains due and payable—and will be collected one way or another. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

According to the Clerk of Court, as of this date, Allen currently owes $3,110 for filing fees owed for district court cases and appeals emanating from this district, not including the $400 fee for this case, which brings the total due to $3,510. If Plaintiff pays the $3,510 owed, the compliant will undergo preliminary review in accord with 28 U.S.C. 1915(e)(2), which is essentially the same frivolity review required under Section 1915A, set forth above. If Plaintiff fails to pay the filing fees owed, the Court will order the filing fee for this case to be collected from Plaintiff's prison trust fund account, and a filing ban is likely to be entered as explained below.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff Allen is **DENIED** pauper status, and his motion for a temporary restraining order is **DENIED**.

**IT IS FURTHER ORDERED** that on or before **September 15, 2014** Plaintiff shall pay the $400 filing fee in full, as well as all outstanding filing fees owed in this district—for a grand total of **$3,510**—or the complaint will be dismissed and the Court will proceed toward a filing ban.

Plaintiff is again **ADVISED** that the Court of Appeals for the Seventh Circuit has clearly instructed that when a prisoner who is ineligible to continue litigating under Section 1915(g)

continues to file suits without paying the necessary filing fee, a filing bar is an appropriate solution. *See Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir. 1995). *See also Ammons v. Gerlinger*, 547 F.3d 724, 726 (7th Cir. 2008) ("[W]hen a prisoner who is subject to § 1915(g) continues filing suits or appeals without paying required fees, this court will enter an order directing the clerks of all courts within this circuit to return all of the litigant's future filings until the necessary fees have been paid.")  Despite being warned that a filing ban was a real possibility, Allen has continued to file suits without payment of the fee, and has adopted the approach of characterizing all claims as "emergencies" in an effort to overcome the three strikes bar.  The Court will wait for the prescribed deadline for payment of the fees to pass before entering a filing ban.   In the event Plaintiff cannot pay the total amount owed, on or before the deadline for paying the fee he should **SHOW CAUSE** in writing why a filing ban should not be entered.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.   Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 15, 2014**

_s/ J. Phil Gilbert_
**United States District Judge**